The opinion of the Court, was delivered by
Hoeeblowee, C. J.
The act under consideration was passed in 1820. It has now been in force about twenty-three years, and it is not a little remarkable, when we come to look at its sweeping and unguarded provisions, that this court should now, for the first time, (as I believe,) be called upon to settle its construction.
By the first section, it is declared to be unlawful for any person to erect, place or have “ any booth, stall, tent, carriage, boat or vessel, for the purpose of selling, giving or otherwise disposing of, any kind of articles of traffic, spirituous liquors, wine, porter, beer, cider or any other fermented, mixed or strong drink, within three miles of any place of religious worship, during the time of holding any meeting for religious worship at such place.”
By the third section, licensed tavernkeepers, merchants, shop keepers, farmers, mechanics and other persons in the usual and lawful transaction of their ordinary concerns and business, in their usual places of doing such business, are not to be affected by the act; nor is the act to be so construed as to affect any person attending such religious meeting, or his property, or persons having a permit in writing, from the overseers or managers of the meeting, to sell bread and other necessary articles of food for *121 man and beast; provided their property “ be not of the description forbidden by this act.”
Whatever may have been the specific object, or whoever may have been the authors of this act of legislation, it is obvious, that the benefit, (if there is any,) of its provisions, is not restricted to any denomination, or to any place, or mode of religious worship. The open fields, the woods, or the house erected for public worship, are alike within its terms; and so long as if is religious worship, it makes no - difference whether the worshipers, are Christians, or pagan idolaters.
The only matters then for our consideration are, whether the defendants in this court had offended against the provisions of the statute; and if so, whether the defendants below, who seized and sold the goods, were trespassers.
The second section of the act enacts, that if any person shall violate the provisions of the first section of the act, the person so offending, shall first be informed of his violation of the act, and shall be warned by any justice of the peace, constable, or two freeholders of the county, to desist from such offence, and to remove such stall, tent, Ac. together with all such articles of traffic, spirituous liquors &c. belonging to such offender; and if the person so receiving such information and warning, shall forthwith cease to offend against the act, he shall remove as aforesaid, at least three miles from such place of religious worship, then no further proceedings shall be had against him. But if he shall refuse or neglect, “ immediately ” to remove as aforesaid, “ then all the said articles of traffic, spirituous liquors &e. together with such booth, tent, stall, carriage &c. shall bej and are thereby declared to be forfeited;” and that it shall then be lawful for any justice of the peace and constable, with two freeholders of the county, to seize and take possession of the said forfeited articles and liquors, together with &c. and at any time within ten days thereafter, to advertise and sell the same ; and the proceeds, after deducting the necessary and lawful expenses of such seizure and sale, shall be paid to the overseer of the poor &c.
The first question then is, whether the plaintiffs below had violated the provisions of this enactment ? It is not pretended, nor is there any evidence, that they were tavernkeepers, merchants, shopkeepers, farmers, mechanics, or other persons, car *122 rying on their ordinary business at their places of residence, or at their accustomed and usual place of transacting such business ; nor is it pretended, that they came within either of the other exceptions from the operation of the act. True, they had hired or contracted for the use of the places where their goods were stored, and exposed to sale, a fortnight before the goods were brought there. But there is no evidence, that they had ever before used the same premises for the keeping and selling of such articles. On the contrary, they brought the goods there as appears by their own witnesses, after the meeting had commenced, and for the very purpose of selling them.
' It must be admitted then, that if the goods in question were such as are forbidden by the statute to be sold, the plaintiffs were acting in violation of its provisions.
It is next made a question, whether the articles which were seized, are among those which are prohibited by the act; and it is insisted by the counsel for the defendants in Certiorari, that they were not; that the design and spirit of the act, was only to prevent the sale of spirituous and other intoxicating drinks. It was argued with some plausibility, that the act did not mean to prohibit the sale of every thing, because by the last clause of the third section, the restriction, so far as relates to persons attending such religious meeting and such as should have a permit in writing from the managers of the meeting, extends only to such articles as “ be not of the description forbidden ” by the act.
I have sought with no little solicitude to sustain this argument, and thus restrict the operation of the act within reasonable and proper bounds. But I have found myself utterly unable to do so, without doing violence to the language of the legislature and throwing the whole act into confusion. It is true, by the closing words of the third section “ provided such property be not of the description forbidden by this act,” the legislature seem to have supposed, that they had not forbidden the sale of every ‘thing. And yet, the first section prohibits “ the selling, giving or otherwise disposing of, any hind of articles of traffic.” These words are of the most comprehensive character. They embrace every thing that is the subject of trade or traffic ; whether it be dry goods, groceries, liquors, hardware or lumber. The specification of liquors afterwards, seems to have been added out of *123 abundant caution. Again, the exception in favor of merchants, shopkeepers, farmers and mechanics, carrying on their usual and lawful business, at their usual places of business, is inconsistent with the idea, that the legislature intended only to interdict the sale of intoxicating liquors; for if the general interdiction did not affect the ordinary and lawful business of such persons, why make an exception in their favor ? And again, in tho exemption of such persons as should have a permit from the managers of the meeting, to sell bread and other necessary articles of food for man and beast, we have strong evidence, that the sale of such articles would have been prohibited by the law, if such exemption had not been made in favor of licensed persons. For why give them a license to sell bread and food for man and beast, if the act forbid only the sale of intoxicating liquors ? Another ground urged by the plaintiffs below is, that the defendants did not advertise the property for sale, as tho law directs, and thereby became trespassers ah initio. To that it is correctly answered, that if the defendants below did not commit an act of trespass in seizing the property, they could not afterwards become trespassers by relation. The doctrine of trespass ab initio applies only to cases in which the party from whom the goods were taken, has an interest remaining in the property; as in cases of distress for rent, or for damage feasant or goods seized on execution. In this case, if the defendants made a lawful seizure of the goods, the plaintiffs had ceased to have any right to them or interest in them. They never could reclaim them, or the value of them.
The inquiry then is, whether the defendants below lawfully seized the goods; that is, whether they acted in good faith, and with an intention to execute the law fairly for the purposes for which it was passed ? Or whether, under color and pretence of the law, and without any regard to its provisions and designs, they intended to harass the plaintiffs and take away their property ? This was a question of intent; the answer to which was to be collected from the evidence in the cause. That the plainti ffs below were acting contrary to law; that they had been warned by the defendants in the manner directed by the act to desist from selling the goods and to remove them to some place, at least three miles distant from the place of worship, and that the *124 plaintiffs had neglected to do so, are admitted by the case; or at least, the case states that all these facts were proved on the trial.
But this may all be true, and yet if the defendants were not in good faith acting under the law, and intending to carry it out, they were trespassers, not by relation, but by the original taking.
This question of intent or design, was a question to be settled by the court below. They may have thought, from the conduct of the defendants, in carrying the property to a tavern close by, and there selling it immediately, without advertising it for sale, that they were not acting in good faith, with an honest intention to execute the law, but only under color and pretence of it, and that they were therefore wrong doers. The case stated admits all the facts; but does not admit the intent or quo animo, with which the defendants acted, and we cannot review the decision of the court below on that point.
Another objection to the judgment is, that the court would not permit the defendants to inquire of the witnesses and to prove, that Hubbs bought in the goods for the plaintiffs, and as their agent, at a mere nominal price, according to an arrangement between the parties to that effect. The court was certainly wrong in rejecting the evidence offered on that point. It was competent evidence in mitigation of the damages. But the force of this objection was taken away by the subsequent testimony of Hubbs, who testified that he did not act in any sense as the agent for the plaintiffs, nor even so far as he knew, with their knowledge ; and that they were not at the sale.
Upon the whole then, I do not see that we can disturb this judgment-. The statute under which the defendants seek to justify themselves, however good its design, is a very strong one; we may say it is a very extraordinary one. It gives, to persons conducting religious meetings, a sort of despotic jurisdiction' over a circumference of eighteen miles around every place of worship; so far as relates to the right of citizens to give, sell or in omy way dispose of any articles of traffic, except at their own houses, or usual places of business. I do not see why the sweeping language of the act, carried out in its length and breadth, would not compel us all to buy our daily food from the licensed venders of such meetings whenever they happen to be held within three miles of us, instead of getting our supply from people casually bringing their produce to market.
*125 Persons therefore attempting to execute such a statute should take care not only to act in good faith, but in all things to conform themselves to the provisions of the law.
I do not know but the Common Pleas considered the subsequent unlawful conduct of the defendants in selling the property as they did, as showing the quo animo with which they acted and evincing an unlawful purpose in making the seizure. The court had a right so to consider the conduct of the defendants. The language and argument of Gibbs Serg. in Wilkins v. Despard, 5 T. R. 112, is very clear and strong on this point; and it is not enough that we would have come to a different result. It was matter of evidence and the court below was to weigh and determine its effect. If the defendants after making the seizure, had burned up or otherwise destroyed the goods, or had kept and used them to this day, or sold, them in Philadelphia and divided the money between them, no one would pretend that they could shelter themselves under this statute. In such case the evidence of an unlawful intent would be much stronger, but it would be of the same kind. In my opinion therefore, the judgment must be affirmed with costs.

Judgment affirmed.